NO. 07-06-0436-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 24, 2008

_____

KEVIN CARTER, APPELLANT

V.

COOKIE COLEMAN CATTLE COMPANY, INC., APPELLEE

_____

FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;

NO. 9351; HONORABLE GORDON H. GREEN, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellee Cookie Coleman Cattle Company, Inc., recovered judgment against appellant Kevin Carter for conversion of cattle. On appeal, Carter contends as a matter of law he was a good faith purchaser for value of the cattle and could not, therefore, have committed conversion. Finding the evidence insufficient to conclusively establish this claimed status, we affirm.

## Background

On January 6, 2005, Rob Bradley invoiced for delivery to Carter 129 head of cattle at an average weight of 498 pounds. Bradley was an order buyer of cattle. That is, he purchased and shipped cattle for a customer. To finance the transaction, Carter obtained a loan from the Farm Service Administration which required submission of the Bradley invoice before advancing the loan proceeds. Carter delivered the check to Bradley on January 12, 2005.

Coleman was a cattle buyer. On January 16, 2005, it invoiced for sale to Bradley 113 head of cattle at an average weight of 512 pounds. On January 16, 2005, Coleman shipped the cattle to Bradley from Texarkana, Texas, to Clovis, New Mexico. According to its president Chester Daniel "Cookie" Coleman, the distance of shipment could cause cattle to shrink three to five percent. On January 18, 2005, Bradley tendered Coleman a check made for the full purchase price of $66,937.83.

Bradley delivered 109 head of cattle to Carter on January 21, 2005. There was testimony that Bradley placed a "C" ear tag on cattle received from Coleman and the cattle Bradley delivered to Carter bore a "C" ear tag. Bradley died on January 24, 2005. By document dated January 26, 2005, Coleman's bank gave notice that Bradley's bank refused payment of Bradley's check for the cattle purchased. Bradley's estate was without funds sufficient to meet Coleman's payment demand.

Carter ultimately sold the cattle and repaid the FSA.  Coleman sued Carter for conversion[1] and declaratory relief.  Following a bench trial, the court rendered judgment for Coleman for $64,568.35 plus attorney fees of $17,750.  Carter requested findings of fact and conclusions of law which were not filed by the trial court.[2]  This appeal followed.

Discussion

In his live answer Carter denied liability and affirmatively alleged the status "bona fide purchaser for value without notice of [Coleman's] claims."[3]  At trial, the parties substantially disputed the effect of this allegation.  Carter asserted it authorized proof of status as a "good faith purchaser for value" according to section 2.403 of the Business and Commerce Code.  *See* Tex. Bus. & Comm. Code Ann. § 2.403 (Vernon 1994).[4] Conversely, Coleman argued Carter's pleading limited him to proof of the common law

---

[1] Conversion is defined as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Bandy v. First State Bank, Overton,* 835 S.W.2d 609, 622 (Tex. 1992).  Carter counters with the argument he was a bona fide purchaser for value of the cattle he acquired from Bradley, hence he could not convert goods in which he legally held title.

[2] On appeal, Carter does not assign error to the court's failure to file findings and conclusions.

[3] Status as a bona fide purchaser and a good faith purchaser for value are affirmative defenses.  *Valley Ready-Mix Concrete Co. v. Valley State Bank,* 227 S.W.2d 231, 234 (Tex.Civ.App.–San Antonio 1950, no writ) (bona fide purchaser)*; Oakwood Acceptance Corp., LLC v. Massengill,* 162 N.C. App. 199, 206, 590 S.E.2d 412, 419 (N.C. App. 2004) (good faith purchaser).  It is the burden of a party asserting an affirmative defense to sufficiently plead and prove the defense.  *See* Tex. R. Civ. P. 94; *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 481 (Tex. 2001).

[4] Citations to "B & CC §" followed by a section number are to the Business and Commerce Code (Vernon 1994 & Supp. 2008, as indicated).

3

good faith purchaser defense.[5] To qualify as a good faith purchaser under a common law theory, it was for Carter to prove: (1) he purchased cattle from Bradley in good faith, (2) for valuable consideration, and (3) made the purchase without actual or constructive knowledge of any outstanding claims of a third party. *NRG Exploration, Inc. v. Rauch,* 671 S.W.2d 649, 653 (Tex. App.–Austin 1984, writ ref'd n.r.e.). To attain good faith purchaser status under Section 2.403, a party must be: (1) a purchaser, (2) that gave value, and (3) acted in good faith. B & CC § 2.403(a). Good faith purchaser status under section 2.403 does not require absence of knowledge of third party claims and on this ground the UCC deviates from the common law. *In re Samuels & Co.,* 526 F.2d 1238, 1243-44 (5th Cir. 1976); *Rogers v. Ricane Enters.,* 930 S.W.2d 157, 175 (Tex.App.–Amarillo 1996, writ denied).

On appeal, Coleman renews his contention that Carter did not properly plead the claimed good faith purchaser for value status under § 2.403(a) and accordingly waived reliance on the theory. Because discussion of that contention is not necessary to our disposition of the appeal, we do not reach it.

Carter presents two issues for review which we will discuss jointly:

The Trial Court erred in its finding that Kevin Carter was not a bona fide purchaser for value in the trial case.

---

[5] Unlike the common law, good faith purchaser status under section 2.403(a) is not concerned with actual or constructive knowledge by the purchaser of an existing third party claim to the subject goods. *Rogers v. Ricane Enters.,* 930 S.W.2d 157, 175 (Tex.App.–Amarillo 1996, writ denied).

4

The Trial Court erred in its finding that Kevin Carter did not satisfy all legal requirements of a bona fide purchaser for value and erroneously entered Judgment in favor of Appellee.

We interpret Carter's appellate complaint as a legal sufficiency challenge of the evidence supporting the court's adverse finding in the judgment on his claim of good faith purchaser status.[6]

Because the trial court did not file findings of fact and conclusions of law in a separate document, we give effect to the finding in the judgment that Carter was not a good faith purchaser. *See Hill v. Hill,* 971 S.W.2d 153, 157 (Tex.App.–Amarillo 1998, no pet.) (under Rule of Civil Procedure 299a, findings contained in judgment lack authority only to extent of conflict with those in separate document). We review a trial court's fact findings under the same legal and factual sufficiency standards applicable to jury findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994). An appellant attacking the legal sufficiency of evidence supporting an adverse finding on which he had the burden of proof must show on appeal that a contrary finding was established as a matter of law. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). Carter's matter of law issue requires we first examine the record for some evidence supporting the trial court's finding, crediting evidence favoring it if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *See Central Ready Mix Concrete Co., Inc. v. Islas,* 228 S.W.3d 649, 651 (Tex. 2007). Anything more than a scintilla of evidence is

---

[6] Our interpretation of Carter's contention on appeal is supported by the prayer of his brief for rendition of judgment. Coleman so interpreted Carter's issues in his brief and Carter has not objected in reply.

legally sufficient to support the court's finding and the challenge fails. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex. 1996) (no-evidence challenge by party that did not bear burden of proof on issue). But if no evidence appears to support the finding, we then examine the entire record to determine whether the contrary proposition is established as a matter of law. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 276 (Tex.App.–Amarillo 1988, writ denied). A proposition is established as a matter of law when a reasonable fact finder could draw only one conclusion from the evidence presented. *See City of Keller v. Wilson,* 168 S.W.3d 802, 814-16 (Tex. 2005).

In relevant part, section 2.403 provides:

> A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though . . . (2) the delivery was in exchange for a check which is later dishonored.

B & CC § 2.403(a)(2) (Vernon 1994).

The parties' disagreement centers on the application of the statutory definition of good faith under the facts presented. Under section 1.201, "good faith" consists of honesty in fact and the observance of reasonable commercial standards of fair dealing. B & CC § 1.201(20) (Vernon Supp. 2008). The standard incorporates both subjective honesty and objective commercial reasonableness components. B & CC § 1.201, Official UCC

6

Comment § 20 (Vernon Supp. 2008).[7] "Fair dealing" focuses on the fairness of conduct and not the care exercised in performance. Comment § 20.

Carter gave conflicting testimony concerning his knowledge of Bradley's acquisition of the cattle at the time Carter paid Bradley. During his deposition testimony, Carter acknowledged he knew Bradley had not acquired the cattle at the time he delivered the check on January 12. At trial, however, Carter insisted Bradley told him then he had the cattle.[8]

Coleman testified it was not customary in the cattle industry to pay for cattle in full on a price per hundred-weight before delivery. He found the Carter-Bradley purchase and sale arrangement unprecedented in his forty years in the cattle business, and agreed it was a departure from industry standards. Bradley employee Marvin Gorrell's deposition testimony was read. It was to the effect that Bradley ordinarily collected a down payment prior to the delivery of cattle.

The transaction at bar differs from that described in *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351 (5th Cir. 1983), cited by Carter. There, the Fifth Circuit found Iowa Beef was a good faith purchaser under § 2.403 of cattle sold them by one Heller, insulating Iowa Beef from liability to those sellers whose checks from Heller were

---

[7] The Official UCC Comments are not law but are persuasive authority for interpreting statutory language. *Fetter v. Wells Fargo Tex., N.A.,* 110 S.W.3d 683, 687 (Tex.App.–Houston [14th Dist.] 2003, no pet.).

[8] Carter acknowledged the conflicting testimony at trial. He agreed with Coleman's counsel, "Yes, I am changing my mind." His explanation for the change in his testimony was that he now "remembered what went on."

dishonored. *Id*. at 1362. Concluding that the evidence raised no fact issue as to Iowa Beef's good faith, the Fifth Circuit noted Iowa Beef paid Heller for the cattle at the time of their delivery or shortly thereafter. The court said the most that could be said against Iowa Beef is that the company should have known at the time it bought the cattle that Heller had not yet paid his sellers for them. *Id*. Here, the trial court heard evidence that Carter, contrary to industry practices, paid Bradley in full at the outset of the transaction, even though Bradley had not yet assembled the load of cattle Carter thought he was buying.

Although Carter argued at trial that Coleman had not proven that the cattle Carter paid Bradley for were the same cattle Bradley acquired from Coleman, that fact appears undisputed here.[9] On the evidence presented, we find reasonable minds could differ as to Carter's status as a good faith purchaser under the statutory definition. The court's finding that he was not is supported by more than a scintilla of evidence. Accordingly, his legal sufficiency challenge must fail. We overrule his appellate issues and affirm the trial court's judgment.


James T. Campbell
Justice

---

[9] Gorrell agreed that it was Bradley's "habitual" practice on receipt of Coleman cattle to identify them with a "C" ear tag. A list prepared by Bob Arnold, Carter's agent for cattle operations in Texas, was admitted. According to the list, Carter received 109 head of cattle on January 21, 2005, bearing a "C" tag.